Alvin WALK, Plaintiff–Appellant,

v.

P*I*E NATIONWIDE, INC.; the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; Local 299, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendants–Appellees.

No. 90–2097.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 29, 1991.

Decided March 13, 1992.

Barbara M. Harvey, Detroit, Mich. (argued and briefed), for plaintiff-appellant.

Terrence K. Jolly, Matheson, Parr, Schulor, Ewald, Ester & Cooke, Troy, Mich., James P. Hoffa, Hoffa, Chodak & Robiner, Kevin J. O'Neill (argued), James P. Hoffa (briefed), Detroit, Mich., Jerome S. Coleman (briefed), Ashley S. Lipson (argued), Coleman, Lipson & Bradford, Farmington Hills, Mich., for defendants-appellees.

Before NORRIS and SILER, Circuit Judges; and WELLFORD, Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

Plaintiff, Alvin Walk, filed a complaint under § 301 of the Labor Management Relations Act against P*I*E Nationwide, Inc. (P*I*E), his former employer; the Interna-

tional Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (IBT); and Local 299 of the IBT (Local 299), the local union of which Walk had formerly been a member while working as a dockworker and truck driver in the Detroit area. The complaint alleged that after twelve years of service, P*I*E wrongfully discharged the plaintiff due to a "positive finding" of marijuana in a drug test administered pursuant to the National Master Freight Agreement (NMFA). Walk challenged the discharge and unsuccessfully pursued the NMFA's grievance procedures through the final step. At the latter stages, Walk claimed the level of marijuana indicated in the test "was so low that 'passive inhalation' could not be ruled out as the explanation."

Walk's complaint charged P*I*E with discharging him "without just cause ... [and] without evidence of drug intoxication ... in violation of the contractual purpose of drug tests." He claimed that IBT owed him a duty "to represent his interests fairly, and without hostile discrimination, bad faith, recklessness or arbitrariness." The complaint contends that IBT violated this duty by failing to advise and train local officials about "the legal, medical and other technical aspects of the drug testing provisions," "arbitrarily fail[ing] to inform union representatives of facts that it knew" to assist employees such as Walk, and "intentionally fail[ing] to seek or obtain modification of the drug testing provision."

Walk charged that Local 299 similarly breached its duty to represent him fairly by failing to investigate and gather evidence to support his grievance, by failing to present favorable evidence, including expert evidence on "passive inhalation," and by failing to invoke the re-examination provision of the collective bargaining agreement (CBA).

Local 299 raised the affirmative defense that "plaintiff has failed to exhaust his administrative remedies," "his intra-union remedies," and that he "failed to appeal to Joint Council 43," and to the IBT itself. IBT did not raise the failure to pursue administrative remedies as an affirmative defense.

This is one of the first cases in the courts of appeals involving a discharge for failure to pass a drug test at P*I*E, and evidence in two other early drug-testing cases under a similar CBA (involving other employers and the defendant unions) was admitted by stipulation as part of this case.

As part of his proof, Walk affirmed that he, on two different occasions, gave a urine specimen, "witnessed the placement of an already sealed specimen" and then "signed the seal on the mailing container" presuming it to be his own specimen. He did not witness the sealing process, however. Later, Walk stated that he was advised by a P*I*E representative that the test result was 55 ng/ml (30 ng/ml being the CBA minimum for a positive finding). The Local 299 representative advised Walk, who denied marijuana use, to re-take the test at the same designated clinic. At later stages of the grievance procedure, Walk claims that Local 299 representatives learned about chain of custody problems in the drug-testing procedures. He concedes that Local 299 arranged a meeting with him, his lawyer, and the union's lawyers to discuss the case, and that Local 299 attempted to introduce "new evidence" at a subsequent panel hearing. Local 299 allegedly did not, however, challenge the chain of custody, collection and sealing procedures in a timely manner.

After failing to obtain satisfactory results through the grievance procedure, the plaintiff filed suit and the defendants responded with motions for summary judgment. The district court referred the controversy to a magistrate judge who recommended a judgment for both defendants. Plaintiff objected, but the district court nevertheless approved the recommendation. This appeal ensued in which plaintiff presents four issues:

(1) Defendants failed fairly and effectively to represent Walk.

(2) The Local failed in its duty to represent Walk fairly by failing to assess the "reliability" of the lab report and test results.

(3) IBT breached its duty by not terminating urine drug testing "to avoid numerous unjust discharges."

(4) IBT breached its duty by entrusting lab testing and urinalysis to a single individual or company.

We AFFIRM.

## THE DUTY OF FAIR REPRESENTATION

■ A union breaches its duty of fair representation under § 301 of the Labor Management Relations Act when it acts arbitrarily, discriminatorily or in bad faith with regard to a union member. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Each of these three components of the *Vaca* standard imposes on the union a separate requirement. A plaintiff need not prove bad faith or fraud to make out a claim for breach of the duty of fair representation. *Id.* at 177, 87 S.Ct. at 909; *Farmer v. ARA Servs. Inc.*, 660 F.2d 1096, 1103 (6th Cir.1981); *Milstead v. International Brotherhood of Teamsters*, 580 F.2d 232, 235 (6th Cir.1978); *Ruzicka v. General Motors Corp.*, 523 F.2d 306, 310 (6th Cir.), *reh'g denied*, 528 F.2d 912 (1975). On the other hand, simple negligence or mere errors in judgment will not suffice. *Farmer*, 660 F.2d at 1103; *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir.1975), *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976).

■ The Supreme Court in *Airline Pilots Ass'n, Intern. v. O'Neill*, —— U.S. ——, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991), held that "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' (citation omitted) as to be irrational." *Id.*, 111 S.Ct. at 1130. The Court's holding in *O'Neill* reflects that a deferential standard is employed as to a union's actions. They may be challenged only if "wholly irrational." *Id.* at 1136. In carrying out its duty of fair representation, an unwise or even an unconsidered decision by the union is not necessarily an irrational decision. *Id.* at 1136.

Although *O'Neill* dealt with a union's alleged breach in the context of contract-negotiation only, we conclude that its standards apply to both the contract-negotiation and grievance portions of this case. *Id.* at 1135.

■ The Supreme Court has previously held that a union must undertake reasonable investigation to defend a member from employer discipline. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). A union's obligations include the duty to inform members of their essential rights under an employment contract. *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87 (3rd Cir.1968), *cert. denied*, 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969). Thus, union representatives must be aware of the essential elements of the collective bargaining agreement, and be able to advise members about their basic contractual rights and responsibilities. *Milstead*, 580 F.2d at 235. A union does not, however, have to exhaust every possible remedy requested by a member facing disciplinary action. *St. Clair v. Local 515*, 422 F.2d 128, 130 (6th Cir.1969).

■ To succeed on his claim in this type of § 301 case, the plaintiff must usually establish a breach of the union's duty of fair representation and the employer's violation of the collective bargaining agreement. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976). *Hines* requires a plaintiff to prove that the contractual grievance procedure was "seriously flawed by the union's breach of its duty to represent employees honestly and in good faith and without invidious discrimination or arbitrary conduct." *Id.*

■ If the union fails to present favorable evidence during the grievance or arbitration process, this failure may constitute a breach of its duty if that evidence may have brought about a different decision. *Taylor v. Ford Motor Co.*, 866 F.2d 895, 898–99 (6th Cir.1989). Only those important or tactical decisions made by a union official at arbitration that exhibit arbitrary or discriminatory conduct, or actions taken

in bad faith, constitute breach of a duty of fair representation. *Barr v. United Parcel Service,* 868 F.2d 36, 43–44 (2d Cir.), *cert. denied,* 493 U.S. 975, 110 S.Ct. 499, 107 L.Ed.2d 502 (1989).

**A. Defendant Local 299**

The plaintiff claims that Local 299 breached its duty of fair representation in a number of ways. After examining and evaluating these contentions, the magistrate judge concluded that the plaintiff failed to raise a genuine issue of material fact because the union's conduct was, at most, negligent. If the magistrate judge was not erroneous in this recommendation, we may affirm the district court in its adoption of the magistrate judge's report even though it was decided before *O'Neill* and application of its standards. *See Ackley v. Local Union 337,* 948 F.2d 267 (6th Cir.1991).

We believe that all of the plaintiff's allegations concerning the conduct of Local 299 relate to simple negligence and therefore are insufficient to raise a § 301 claim. They fail to assert arbitrary conduct under the *O'Neill* standard because none of the decisions fall "far outside a 'wide range of reasonableness....' " *See O'Neill,* —— U.S. at ——, 111 S.Ct. at 1136. They were not done in "bad faith," with "discrimination," nor did they represent "behavior so unreasonable to be irrational." *Ackley,* 948 F.2d at 267.

After he was notified of Walk's failure to pass the drug test, Walk's union steward urged that he "go as soon as possible to a reputable clinic to obtain an independent drug test." Based on this advice, Walk took two additional drug tests, one at the Park Clinic and another at Doctor's Hospital. Neither of these proved helpful, although the results were furnished to P*I*E.[1] Walk's steward also contacted "an expert on drug testing at the Lafayette Clinic shortly after Walk was discharged." The steward's affidavit indicates also that the Local's business agent, Fistler, used the "passive inhalation" theory in "arguing Walk's case to the panel." This activity does not bespeak union inattention or disregard of Walk's grievance and his drug testing problem. Plaintiff was retested by the same laboratory shortly before the grievance hearing and, once again, tested positively.

Walk complains that the Local did not adequately pursue certain arguments and explain the relevancy of some of the evidence presented to the grievance panel. One of the affidavits by Dr. Arthur McBray, submitted by Walk, argued primarily that urinalysis testing could not detect whether or not "a person was adversely affected by the drug." Even if true, this argument was not a basis for defeating Walk's discharge because the CBA, as interpreted, indicated that a positive result warranted discharge. Dr. McBray's affidavit also argued that regardless of the effect on the user, "marijuana was not an impairing drug" nor was it a "narcotic drug" and that "behavioral effects" were short term after smoking. The affidavit concluded that the cutoff level for marijuana screening should be "at least 100 ng/ml." These arguments, pressed upon us also in Walk's brief, are essentially argumentative and immaterial in light of the CBA requirements. The Local cannot be faulted for failing to pursue further these arguments which could not have changed the outcome and Walk's discharge.

Union representative Fistler's alleged failure to inform the plaintiff of his contractual right under the NMFA to obtain an independent medical examination and drug test did not violate Local 299's duty of fair representation. There is no assurance that yet another test by another authorized lab would have produced a negative result for marijuana. The other authorized laboratory was required to use the same minimum cutoff (30 ng/ml) because that was the level required by the CBA. The union would have been required to pay for another test under the CBA, and its

---

1. The Park Clinic procedure did not test for marijuana and the Doctor's Hospital procedure returned a negative result based on a 100 ng/ml cutoff, a level considerably higher than the level mandated by the NMFA.

advice to Walk was immediately to take another test or tests to establish his claimed innocence. Such advice, even if deemed negligent, was neither arbitrary nor capricious.

■ Fistler's failure to inquire into the forensic standards of the laboratory which did the contract testing was, at most, negligent. Many of the laboratory procedures about which the plaintiff complains are highly technical and beyond the common understanding of even competent and knowledgeable union officials. Local 299 was not required to consult a scientist at its expense to understand all the ramifications of drug testing. There was no obvious indication that the laboratory's standards were lacking or inadequate and very few employees, all of whom like Walk were given advance notice, failed the marijuana test.[2] Fistler's failure to investigate the forensic standards was, therefore, not arbitrary.

■ Local 299's failure to hire an expert witness was a discretionary decision for which Local 299 cannot be found liable absent a bad or discriminatory purpose. A scholarly article and an affidavit detailed the evidence in support of plaintiff's position; a reasonable official could not assume that an expensive expert witness would have made a difference in presenting Walk's case.[3]

■ Fistler's failure to explain the relevancy of plaintiff's documentary evidence which was presented, but not received at the arbitral hearing, was merely negligent, and it made no demonstrable difference in the outcome. Fistler raised the passive inhalation defense, and attempted to submit evidence in support of that theory. It was up to the committee to accept or reject it and, therefore, we find no arbitrary failure in this respect.

■ Fistler's failure to argue that the 30 ng/ml minimum cutoff under the CBA did not prove or establish drug intoxication was not an arbitrary action. The CBA itself established the minimum cutoff standard. That some other enterprise or association used a higher minimum level was essentially irrelevant. The committee was bound by the terms of the CBA which stated that 30 ng/ml was a positive result and justified discharge.

■ Local 299's failure to argue effectively the passive inhalation defense was not irrational and arbitrary. Fistler raised the passive inhalation issue with the arbitral committee. That Walk's own evidence raises serious questions about the legitimacy of such a defense in this case may

---

**2.** The defendants admitted that the purpose of the 30–60 day notice of drug testing is to "permit sufficient notice to 'casual' or 'recreational' off-duty drug users to stop such use." Answer to request for admission # 3.

**3.** One of the articles on passive exposure to marijuana smoke, written September 1986 by Edward J. Cone and Rolley E. Johnson, entitled "Contact Highs and Urinary Cannabinoid Excretion After Passive Exposure to Marijuana Smoke" in *Clinical Pharmacology and Therapeutics*, contained the following information:

Also, subsequent passive inhalation studies in controlled environments have been unable to confirm development of a "contact high" or other subjective effects from marijuana smoke exposure, but have found a Delta–9–THC in plasma and cannabinoid metabolites in urine, albeit at low levels. Perez–Reyes et al. reported a maximal plasma level of 2.2 ng/ml and two minimally positive urine samples for cannabinoid metabolites, both collected from a nonsmoking subject shortly after exposure for 1 hour to the smoke of 4 marijuana cigarettes (2.8% Delta–9–THC). Seven-

ty-eight other urine samples collected from subjects after passive smoke, exposure were negative for cannabinoids. Law et al. reported a complete lack of Delta–9–THC in blood and <7ng/ml of cannabinoid metabolites in the urine of subjects exposed for approximately 1 hour to the smoke of 6 marijuana cigarettes containing an average of 17.1 mg. Delta–9–THC. Morland et al. recently reported detection of Delta–9–THC in the blood of subjects exposed to marijuana smoke in a small closed car. Blood levels ranged from 1.3 to 6.3 ng/ml immediately after exposure. Passive inhalation also resulted in the detection of cannabinoids in urine by RIA and EMIT d.a.u. assay (Syva Co.).

This report produced little support, in light of Walk's testimony and evidence, for his passive inhalation argument. We find no error in the grant of summary judgment for Local 299 with respect to its failure to obtain an expert witness on passive inhalation during the grievance and arbitration process under the circumstances.

explain why the committee refused to accept the plaintiff's contentions.

Walk presented many facts, some of which dubiously support his passive inhalation theory. He testified that he liked being outdoors and did volunteer boat duty for the Coast Guard. He testified that he enjoyed shooting pool regularly and knew "nothing" about marijuana.[4] He also enjoyed fishing with his brother, a regular marijuana smoker. He could not state with certainty if the other pool players he associated with smoked marijuana at the table while playing. He admitted that they did not smoke "at the pool table, but they may have smoked in the bathroom or in front of the pool hall."

The test which Walk failed was given in August when Walk planned to be outdoors "fishing and boating" much of his off time, rather than indoors playing pool at a bar. He testified that he spent most of his time in the summer outdoors or with his wife and family, but truck drivers, he said, had a "habit" of shooting pool and having "a few beers" after work and staying perhaps "an hour or fifteen minutes." Walk claimed primarily that his brother, Steve, exposed him to marijuana smoke before he took the fateful August, 1986 drug test. He conceded, however, that it was "impossible" for him to say how many times, within 60 days of the test, he was with his brother when he was smoking marijuana.

Fistler's alleged failure to investigate adequately the case before the arbitration was negligent, but not arbitrary in and of itself. Had Fistler promptly and adequately investigated the discharge, however, he may have learned that the chain of custody used by the clinic was questionable.

■ The magistrate judge found that the "method [of collecting and sealing the specimen] clearly violate[d] the procedures as outlined in the collective bargaining agreement." Had it not been for Walk's perceived failure to raise a genuine issue of material fact with respect to Local 299, the magistrate judge concluded that the improper chain of custody would have pre-

cluded granting summary judgment *for P\*I\*E* (a violation of the required procedure). *Martin v. Roadway Express*, No. C87–0367A (N.D.Ohio 1987), indicates that a defect in the mandated chain of custody may be grounds for setting aside a discharge resulting from a drug test violation. We consider whether Local 299's failure to raise this issue in a timely fashion may have constituted more than mere negligence, and whether not raising the chain of custody issue may have been "far outside 'a wide range of reasonableness'" because it may well have made a difference in the outcome of Walk's grievance.

The chain of custody issue is the most difficult of those raised by Walk. Failure to challenge the procedure did not involve a mere tactical decision by Local 299, and it did not involve a large expenditure of funds. It presents a very close question, but we are persuaded that this failure was more of an omission or oversight, a negligent error of judgment that was not directed against plaintiff capriciously or in bad faith. We accordingly conclude, despite some reservation, that this conduct was not outside the *O'Neill* standard under all the circumstances.

We accordingly AFFIRM the district court in respect of each of the issues as to Local 299.

## B. Defendant IBT

■ The magistrate judge, after reviewing the record, found that IBT had conducted training on the "drug program," and that Local 299's business agent had "attended the area seminars and training sessions." The district court found no error in the magistrate judge's recommendation that IBT had not violated its duty to Walk and other union members. We also find no error in this respect because IBT educated its locals and offered them training about the drug testing provisions. Although plaintiff and his counsel may believe the training to have been inadequate, we find as a matter of law that IBT did not violate its duty of fair representation. *See Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903,

---

**4.** Walk commented in his deposition that "you can't shoot a stick and smoke marijuana."

17 L.Ed.2d 842 (1967). Even if we were to deem IBT's efforts to be inadequate or insufficient, this type of action constitutes a mistake in judgment, not a basis for finding a failure of fair representation. The magistrate judge was correct that IBT did not act in bad faith, with a hostile motive, or in a discriminatory manner towards plaintiff. *See Anderson v. Ideal Basic Indus.*, 804 F.2d 950 (6th Cir.1986).

With respect to IBT's negotiation of a CBA containing a drug testing policy which would permit, under certain circumstances, a discharge for a single negative test result, the Supreme Court in *O'Neill*, — U.S. —, 111 S.Ct. 1127 (1991), has held that a breach of duty occurs only when "the union's behavior is so far outside 'a wide range of reasonableness' (citation omitted) as to be irrational." *Id.*, 111 S.Ct. at 1130. There is no basis to reach such a conclusion on this record. *See Brown v. IBEW, Local Union No. 58*, 936 F.2d 251, 255 (6th Cir.1991). Plaintiff argues in his brief that the minimum standard for finding marijuana intoxication in the CBA was too low. At the same time, he concedes that IBT had retained a drug testing expert for assistance in this emerging area of controversy about safety standards for persons operating heavy vehicles on public highways. In essence, the plaintiff complains that IBT's assistance concerning problems encountered in drug testing came "too late" to help him. We find no error in the district court's conclusion, based on the magistrate judge's finding, that its part in negotiating and administering the drug testing aspect of the CBA did not constitute, on this record, any violation of its § 301 duty to Walk.

There were no genuine issues of material fact as to IBT's conduct that would have precluded summary judgment to it in its favor.[5] We find no error in the magistrate judge's findings as to IBT with respect to training of local union representatives, its alleged failure to police the CBA, or in its negotiation of a contract including a drug testing provision including standards and procedures to be utilized in drug testing. *See Brown*, 936 F.2d at 255.

Since we have affirmed on the merits of the fair representation issue, we do not discuss at any length the issue found to be determinative by the district court, the question of exhaustion.

IBT and Local 299 argued that the plaintiff failed to exhaust his intra-union remedies. The magistrate judge and the district court agreed with the defendants and held that the plaintiff should not be allowed to proceed.

Plaintiff filed no internal union charge against defendant IBT for its alleged misconduct in respect to Walk's discharge. He did not appeal Local 299's actions to IBT, to its executive board, or to the Teamsters joint council. According to the magistrate judge, Walk presented no evidence to show that such an effort would have been futile. There was no demonstrated exhaustion of administrative remedies as to IBT, but the latter did not raise this matter as an affirmative defense. In contrast, Local 299 properly raised exhaustion as an affirmative defense in its answer to Walk's complaint. We reach no decision concerning this defense presented by defendants.

The magistrate judge also recommended, and the district court accepted the recommendation, that:

> The decision to terminate plaintiff from his employment was made by the Joint Employer Union Committee. Throughout the proceedings and, in the extensive discovery conducted and made available to this magistrate, the plaintiff has not demonstrated that this panel acted in bad faith, improperly or with hostility toward the plaintiff. Based upon the collective bargaining agreement, it does not appear to this magistrate that the Joint Employer Union Committee did anything other than follow the terms of the collective bargaining agreement.

---

**5.** This conclusion applies to the laboratory testing and analysis by Drugscan, the entity with which Dr. Cohn was associated. There was no showing of the latter's lack of expertise, competence, or any conflict of interest. Rather, plaintiff speculated concerning whether Dr. Cohn's quality control standards were adequate and uniform.

Based on these observations, the magistrate judge concluded that because the "plaintiff was granted a full and fair hearing before the joint committee, ... the plaintiff's action against the local union should be dismissed."

Again, we reach no decision as to whether the district court was correct with respect to finality of the grievance/arbitration committee's decision.

The issues in this controversy are difficult and complex. We find the chain of custody question especially close. For the reasons indicated, however, we AFFIRM the decision of the district court. Plaintiff has not demonstrated that defendant unions have failed to represent him fairly.