16 F.3d 1218
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Charles E. CHANCE, Plaintiff-Appellant,
v.
TEAMSTERS, CHAUFFEURS & HELPERS, LOCAL UNION NO. 327;
Howard F. Baer, Inc., Defendants-Appellees.
 No. 93-5196.
 United States Court of Appeals, Sixth Circuit.
 Feb. 15, 1994.
 
 Before: MILBURN and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Charles E. Chance appeals the summary judgment dismissal of his hybrid Sec. 301 action against his former union and former employer. We affirm the district court's determinations.
 
 I.
 
 2
 Plaintiff-appellant Charles E. Chance ("Chance") was employed as a truck driver for defendant-appellee Howard F. Baer, Inc. ("the Company"), a trucking concern with a terminal in Nashville, Tennessee, from January 1989 until his discharge on December 4, 1989. Defendant-appellee Teamsters, Chauffeurs & Helpers Local Union No. 327 ("the Union") was the exclusive labor representative for truck drivers employed by the Company.
 
 
 3
 On May 1, 1989, Chance was involved in a trucking accident which he concedes was his fault. On November 27, 1989, Chance was involved in his second accident as an employee of the Company. The appellees maintain that Chance caused the accident by driving too slowly in the left lane of a six-lane interstate, and by pulling his hand valve down (when a truck pulled in front of him) causing his trailer to jackknife. Chance maintains that the accident was caused by the driver of an unidentified truck that "swerved" into his lane causing Chance to "swerve and brake suddenly." Appellant's Brief at 5.
 
 
 4
 On December 12, 1989, the Company notified Chance that he was being discharged for having an "avoidable" accident on November 27. Chance subsequently filed a grievance with the Union. Though the business agent for the Union, Wayne Storey, met with the Company's representatives, the parties were unable to resolve the dispute. On December 28, 1989, Storey notified the Company that Chance's grievance would be taken to Step 3 of the grievance procedure (an investigatory stage in which the two sides collect the necessary documents and allow the grievant to be heard) wherein the grievance is submitted to a committee of Union and Company designees. If a Step 3 committee is unable to resolve a grievance, the parties may then arbitrate their dispute.
 
 
 5
 The Step 3 committee met on April 20, 1990, to ascertain the pertinent facts and to resolve the grievance. The committee listened to Chance's version of the accident and reviewed numerous documents submitted by Storey and by the Company's representatives including: the accident report prepared by the police; the Company's accident report; the Company's discharge letter; Chance's grievance form; a sworn statement by Thomas Scholl, a truck driver who witnessed the accident; and, Chance's statement. The Company's representatives discussed Chance's role in the accident and his driving record, including his earlier accident and the complaints that the Company had received from drivers calling the telephone number on the back of Chance's trailer.
 
 
 6
 Chance concedes that he tried to stop his vehicle by pulling the hand valve down. The Company's representatives maintain that the appellant's use of the hand valve caused the accident. In fact, Chance's Union representative at the Step 3 hearing, Wayne Storey, a truck driver with approximately 37 years of experience, agreed that the appellant's use of the hand valve contributed to the accident. The Union representative on the Step 3 committee, Luther Watson, reached the same conclusion:
 
 
 7
 I know from my years of experience as a truck driver ... that to pull a hand valve down on wet or partially wet pavement with an empty trailer will most surely result in the trailer jackknifing, as it did in this instance.
 
 
 8
 Moreover, Chance's actions violated the Tennessee Department of Safety's written policies:
 
 
 9
 The trailer hand valve (also called the trolley valve or Johnson bar) works the trailer brakes. The trailer hand valve should be used only to test the trailer brakes. Do not use it in driving because of the danger of making the trailer skid. The foot brake sends air to all of the brakes on the vehicle (including the trailer(s)). There is much less danger of causing a skid or jackknife when using just the foot brake.
 
 
 10
 Tennessee's Commercial Driver License Manual, Section 6.2 ("Combination Vehicle Air Brakes--Trailer Hand Valve").
 
 
 11
 The committee denied the Union's claim for reinstatement after finding that Chance had been properly discharged. Chance then filed this hybrid Sec. 301 action (pursuant to the Labor Management Relations Act, 29 U.S.C. Sec. 141 et seq.) on October 19, 1990, against the Union for breaching its duty of fair representation and against the Company for breaching the collective bargaining agreement.
 
 
 12
 On April 30, 1991, the district court dismissed Chance's claim against the Company. On July 11, 1991, the Union filed a motion for summary judgment and a memorandum in support thereof. On August 6, 1991, the district court vacated its April 30, 1991 order dismissing the Company and reinstated the Company as a defendant. On March 13, 1992, the magistrate issued his report recommending that the Union's summary judgment motion be granted. Chance filed objections to the magistrate's report, the Union and the Company responded, and the district court ordered a hearing.
 
 
 13
 At the hearing, the district court reopened discovery to allow Chance additional time to obtain evidence to oppose the Union's motion for summary judgment. On August 27, 1992, Chance filed the documents he had obtained during the extended discovery period. On December 1, 1992, the district court "adopted and approved" the magistrate's report and recommendation "in all respects" and dismissed this action with prejudice.[1] The district court subsequently rejected Chance's "Protective Motion For a New Trial and/or To Alter Or Amend Judgment."
 
 
 14
 Chance thereafter filed a timely notice of appeal.
 
 II.
 Standard of Review
 
 15
 Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A district court's grant of summary judgment is reviewed de novo, Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988), wherein this court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. 60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987).
 
 
 16
 The moving party has the burden of establishing that no genuine issue of material fact exists. Id. Nevertheless, in the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
 
 
 17
 "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). The dispute must be genuine and the facts must be such that, if they were proven at trial, a reasonable jury could return a verdict for the nonmoving party. 60 Ivy St. Corp., 822 F.2d at 1435. If the disputed evidence "is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).
 
 Duty of Fair Representation
 
 18
 Though "a union must undertake reasonable investigation to defend a member from employer discipline," Walk v. P*I*E Nationwide, Inc., 958 F.2d 1323, 1326 (6th Cir.1992) (citation omitted), "[a] union does not ... have to exhaust every possible remedy requested by a member facing disciplinary action." Id. (citation omitted). "A union breaches its duty of fair representation under Sec. 301 of the Labor Management Relations Act when it acts arbitrarily, discriminatorily or in bad faith with regard to a union member." Id. See also Ryan v. General Motors Corp., 929 F.2d 1105, 1109 (6th Cir.1989) ("In the grievance context, breach of the duty of fair representation occurs where: the union's conduct is arbitrary, discriminatory or in bad faith; the union processes the grievance in a careless manner; or the union inadequately handles the grievance because it is ignorant of contract provisions having a direct bearing on the case.").
 
 
 19
 In Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65 (1991), the Supreme Court held that "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." Id. at 67. See also Walk v. P*I*E Nationwide, Inc., 958 F.2d at 1326 (a union's actions "may be challenged only if 'wholly irrational' ").
 
 
 20
 To succeed on his claim, Chance must establish a breach of the Union's duty of fair representation and the Company's violation of the collective bargaining agreement. See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-71 (1976) ("To prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union."). Specifically, Chance must establish that the contractual grievance procedure was "seriously flawed by the union's breach of its duty to represent employees honestly and in good faith and without invidious discrimination or arbitrary conduct." Id. at 570.
 
 
 21
 "If the union fails to present favorable evidence during the grievance or arbitration process, this failure may constitute a breach of its duty if that evidence may have brought about a different decision." Walk v. P*I*E Nationwide, Inc., 958 F.2d at 1326 (citing Taylor v. Ford Motor Co., 866 F.2d 895, 898-99 (6th Cir.1989)). Tactical errors, however, "are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach.... 'As long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage.' " Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43-44 (2d cir.), cert. denied, 493 U.S. 975 (1989) (citations omitted).
 
 
 22
 Chance alleges that the Union breached its duty of fair representation by failing to obtain an exculpatory statement from Thomas Scholl, a witness to the accident.[2] The Union asked Chance to obtain the statement himself, then presented the statement to the Company in an unsuccessful attempt to resolve the grievance. Because a union may request that its members assist in the investigation of their own claims, and because Scholl's exculpatory statement was presented to the Company, Chance's claim must be rejected.
 
 
 23
 Chance similarly claims that the Union breached its duty of fair representation by failing to locate and interview the driver of the truck that swerved into his lane. The Union, in turn, claims that it could not locate the vehicle because Chance could not identify the truck, and maintains that the truck driver's statement would have been, at best, corroborative testimony because the parties agree that a truck swerved in front of Chance. Because the driver of the truck that swerved into Chance's lane could not testify about the appellant's use of his hand valve, and because it is unlikely that the driver (who left the scene of the accident) would admit that he had caused the accident, the Union's decision to curtail its investigation was not arbitrary or irrational.
 
 
 24
 Chance also claims that the Union breached its duty of fair representation by withdrawing his grievance prior to arbitration. We reject Chance's claim because the grievance process "is not expected to be error free and the courts should hesitate to interfere with legitimate internal union decisions which fairly evaluate whether a claim warrants resort to the arbitral machinery." Poole v. Budd Co., 706 F.2d 181, 184 (6th Cir.1983) (citations omitted). See also Ryan v. General Motors Corp., 929 F.2d at 1110 ("Mapes conducted a thorough investigation of the facts and concluded that the grievance would not be successful in arbitration. Therefore, in good faith, he withdrew it from the grievance procedure. Certainly, this action was within the scope of Mapes' authority on behalf of the International Union; it was not a breach of the duty of fair representation as a matter of law.").
 
 
 25
 The Union withdrew Chance's grievance prior to arbitration after determining that the appellant could not prevail because the accident was avoidable and was his second in less than one year with the Company. Because "[a]n action will not lie against a union for failure to process a grievance absent a showing of fraud, misrepresentation, bad faith, dishonesty of purpose or such gross mistake or inaction as to imply bad faith," Balowski v. International Union, UAW, 372 F.2d 829, 834 (6th Cir.1967), and because the Union's decision to withdraw Chance's grievance prior to arbitration was justified, we reject Chance's claim.
 
 III.
 
 26
 We AFFIRM the district court's determinations for the aforementioned reasons.
 
 
 
 [1]
 Though the Company did not expressly join in the Union's motion, it must be noted that the district court dismissed the Company from this action on April 30, 1991, months before the Union filed its motion for summary judgment on July 11, 1991. Though the district court reinstated the company as a defendant on August 6, 1991, the district court's Order precluded the Company from filing its own summary judgment motion by staying "[a]ll further proceedings in this action ... except those necessary and relevant to the disposition of the motion of the defendant, Teamsters Local 327, for summary judgment." The Company thereafter joined the Union in responding to Chance's objections to the magistrate's Report and Recommendation, and to Chance's motion for a new trial. Moreover, the district court named both the Company and the Union in the November 27, 1992 Order dismissing this action "with prejudice." We therefore conclude that the district court dismissed this action in its entirety, and that we have jurisdiction to entertain this appeal
 
 
 [2]
 Scholl's sworn statement noted (in relevant part):
 On Monday, November 27, 1989 about 1:00 p.m., I was driving south on I-75, through Dayton, Ohio. It had been raining lightly and the road was a little wet. I was in the middle lane and there was a tractor trailer (with "Rite" written on the back door) farther in front of me in the middle lane to the left lane very quickly, with no warning or turn signal. The rear of the "Rite" truck would have hit the right front of the "Howard Baer" truck, had Mr. Chance not have reacted quickly, but he (Mr. Chance) did hit his brakes and swerved left a little. I saw his brake lights come on, then the "Howard Baer" truck started to jackknife and slid back across all three lanes and then hit the guard rail on the far right side of I-75. When the "Howard Baer" truck stopped, his tractor was facing north and his trailer was facing east and west, then a car ran into his front end. I am an experienced truck driver of 19 years, and in my opinion the "Howard Baer" driver did what I or anyone else in that situation would have done. I do not feel in any way that Mr. Chance was at fault. I feel that the "Rite" truck was the cause of the accident. The "Rite" truck never stopped, he just kept going.
 Appellant's Brief at 8.