NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0007n.06
Filed: January 7, 2009

No. 07-3918

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MICHAEL T. USZAK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Northern |
| YELLOW TRANSPORTATION, INC., ET AL., | ) | District of Ohio |
| | ) | |
| Defendants-Appellees. | ) | |

Before:      BOGGS, Chief Judge; CLAY, Circuit Judge; and BERTELSMAN, District Judge[*].

BOGGS, Chief Judge.  Plaintiff Michael T. Uszak appeals from summary judgment in his hybrid § 301 Labor Management Relations Act of 1947/breach of duty of fair representation claim. Uszak argued that his employer, Yellow Transportation, Inc (Yellow), violated the collective bargaining agreement (CBA) governing his employment relationship by terminating him without first issuing a warning letter and that his union breached its duty to represent him fairly in his grievance by failing to argue that this alleged violation made his termination improper.  Because the union's refusal to adopt Uzsak's view of the CBA was not arbitrary, we affirm the decision of the district court granting summary judgment.

**I**

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

No. 07-3918
Uszak v. Yellow Transportation, Inc., et al.

The conflict in this lawsuit is, in part, about who is the authoritative interpreter of the terms of a collective bargaining agreement. Uszak argues that by the plain terms of the CBA, any employee accused of wrongdoing (other than of those offenses listed as per se cause for termination) is owed a warning letter and an accompanying probation period prior to more severe punishment. After a fist fight on company grounds arising out of dispute between Uszak, a union steward, and Curtis Castle, another steward, Yellow terminated Uszak. Yellow did not issue a warning letter and insisted that the fight constituted just cause for the termination. Uszak went to his union and sought relief in the grievance process. The union defended Uszak on the ground that there was not just cause for his termination because Castle was the aggressor. But the union did not believe that the CBA entitled Uszak to a warning letter and did not press that argument. Instead, the union understood the discipline process to be governed by an Ohio-specific policy that requires notice and hearing in the place of the warning letter. Uszak has now asked the federal courts, under the Labor Management Relations Act (LMRA), to interpret the CBA in the first instance and conclude that both his employer and union breached duties owed to him because they did not recognize his right to a warning letter and probationary period prior to termination.

**A**

Typically, federal courts, following the Congressional policy underlying labor law, leave such a dispute over rights pursuant to a collectively bargained contract to the grievance machinery outlined in that agreement. *See* 29 U.S.C. § 173(d) (providing that the "final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes . . . ."). The Supreme Court explained that this means that a "question of interpretation of the

- 2 -

collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him . . . ." *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 568 (1960). Nevertheless, Uszak's "hybrid" claim that both parties to the contract have misconstrued it (and that the union's misconstruction breaches its duty to represent him fairly against his employer) is cognizable because even "when the procedures have been followed and a decision favorable to the employer announced . . . [a] union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures [and] also removes the bar of the finality provisions of the contract." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567 (1976).

This background explains why we require Uszak to prove breaches on both the part of Yellow and his union in order to recover against either. *See Vencl v. Int'l Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 424 (6th Cir. 1998). If the employer did not breach by terminating Uszak, then the union's breach did not cause any harm to him. Similarly, because the availability of the claim is premised on the union's failure prejudicing the otherwise sufficient internal governance procedures, Uszak can prevail only if the "Union's actions tainted the grievance procedure such that the outcome was more than likely affected by the Union's breach." *Dushaw v. Roadway Express*, 66 F.3d 129, 132 (6th Cir. 1995).

Moreover, our deferential approach to labor decisions does not evaporate once Uszak alleges a breach of fair representation by his union. While there are "three separate and distinct possible routes by which a union may be found to have breached its duty," *Black v. Ryder/P.I.E. Nationwide*,

15 F.3d 573, 584 (6th Cir. 1994), none are easy to demonstrate. Specifically, "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).

Uszak, having alleged no bad faith or discrimination, must show that his union's representation of him was arbitrary. This is not a forgiving standard to plaintiffs. A union has "room to make discretionary decisions . . . even if those judgments are ultimately wrong. . . . A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." *Marquez v. Screen Actors Guild*, 525 U.S. 33, 45-46 (1998); *see also Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991) ("[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time . . . the union's behavior is so far outside a wide range of reasonableness . . . as to be irrational.") (internal citations omitted).

**B**

Thus, the dispositive question is whether, on the facts most favorable to him, *see Matushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), Uszak can show that the union's failure to demand a warning letter under the CBA was without rational basis or explanation. He argues that the plain language of that agreement resolves this issue in his favor.

Uszak argues that two documents (a national contract and a regional supplement) determine the rights and duties of union members and employers under the CBA. The defendants dispute this, alleging that a third document, governing Ohio only, also applies.

No one disputes that the National Master Freight Agreement (NMFA), a multi-employer union contract to which Yellow and Uszak's union are parties, is the basis for the CBA. The NMFA provides the first thirty-two articles of the CBA. The remaining Articles, including the one governing discharge from employment, are determined by modular regional agreements. For Uszak, the Central States Area Over-the-Road Supplemental Agreement (Supplemental Agreement) applies. The third document is the "Ohio Rider." It purports to amend certain sections of the Supplemental Agreement. Its validity is at issue here.

The short of it is that if only the Supplemental Agreement applies, Uszak has a colorable claim that he was entitled to a warning letter, but if the Ohio Rider also applies, his claim fails. Specifically, under Article 46, the discharge provision in the Supplemental Agreement, only certain offenses – but not fighting – are listed as per se cause for termination. Otherwise, "the Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice of the complaint against such employee to the employee, in writing, and a copy of the same to the Local Union and job steward affected . . . ." Alternatively, Ohio Rider policy provides that "no member shall be discharged or taken out of service by the Employer . . . *without first being given a hearing by the Employer*." A 1983 policy statement from the Ohio State Joint Committee (the relevant labor-management governing council) explained that the Rider requires "an employee must be given a hearing . . . prior to discharge or suspension" but this "hearing replaces the Central States warning letter, it is NOT in addition thereto." (emphasis in original). That policy statement indicates that the Ohio hearing policy had

No. 07-3918
Uszak v. Yellow Transportation, Inc., et al.

been in place for more than 20 years and the relevant union and employer officials confirmed in their

depositions that it continued to displace the letter requirement in the most recent CBA.[1]

Uszak claims that the Rider, notwithstanding that it embodies established practice between

this employer and union, is legally ineffective because (1) its terms obviously contradict the Article

46 letter requirement and (2) Article 2, Section 5 of the NMFA prohibits Riders from amending the

agreement. ("[T]he specific provisions of this Agreement and applicable Supplemental Agreements

shall apply without being subject to variance by Riders."). Uszak, in an attempt to get this court to

ignore the construction placed on the contract by its parties and interpret it in the first instance,

argues that because the union is under a duty to abide by the CBA, its adherence to a policy contrary

to the CBA's plain terms is a per se breach of the duty of fair representation. Whatever the merits

of this proposed rule, it is not the case here that the CBA's zipper clause forecloses the amendments

in the Ohio Rider.

---

[1] At oral argument, Uszak pointed out that the record included only three of the four pages of the Ohio Rider and argued that this defeats summary judgment by leaving open the question of what documents actually constituted the collective bargaining agreement. We do not agree that this deficiency in the record creates a dispute of material fact. The included pages contain the language that amends the disciplinary procedure; language indicating that it is in effect for the period of the most recent NMFA (April 1, 2003 to March 31, 2008); and the signatures of the Ohio "Union Chairman" and "Employer Chairman." Both the fact of the agreement and its substance are corroborated by the depositions of the relevant management and labor officials, each of whom indicated that the Rider controlled and that by its terms no warning letter was required. The 1983 policy statement, paraphrasing the Rider and explaining its effect of displacing the warning letter policy, also corroborates the portion of the agreement we have. While that statement pertained to an earlier version of the CBA, the officials again stated in their depositions that it embodied the policy that is still followed by Ohio signatories to the NMFA.

As the defendants point out, Article 46 also provides "Uniform rules and regulation with respect to disciplinary action may be drafted for each state, but must be approved by the Joint State Committee for such state . . . ." This language readily admits to a reading that authorizes state-level unions to adjust the disciplinary procedure outlined by that section. That is precisely what has happened here: the Ohio signatories interpreted the clause to permit state-level amendments to the discipline procedure and then negotiated such an amendment. The union's adherence to the policy is therefore not arbitrary by reason of being in conflict with the CBA's plain terms, regardless of what the "best" reading of the contract would be.

In the event that we disagree with his plain language argument, Uszak also alleges that it was arbitrary for the union to have allowed this alternative procedure. On his view, the Rider jettisons the "progressive discipline" scheme of the Supplemental Agreement (first infraction always results in a letter and only after a second infraction can the employer sanction or terminate) in favor of a meaningless hearing requirement, allowing any employee to be fired so long as the employer is willing to meet with the employee and say why he was fired. We do not agree that agreeing to and enforcing the Ohio Rider is arbitrary.

First, a union representative need not adopt the construction of the CBA most beneficial to the individual member when it is contrary the union's view. *See Early v. Eastern Transfer*, 699 F.2d 552, 557 (1st Cir. 1983) (explaining that a union representative is "entitled to decline to put forward an interpretation of the collective bargaining agreement which he and his union reasonably believed was incorrect."); *cf. Driver v. U.S. Postal Service, Inc.*, 328 F.3d 863, 869 (6th Cir. 2003) (holding that the decision whether or not to pursue a grievance on behalf of an individual member is within

the discretion of the union). The opposite rule would undermine the benefit of organized labor: individual members driving the union's view of the CBA based on their litigation needs and not the needs of the bargaining unit. Here, Uszak may have demonstrated that his union has followed its understanding of the CBA and that understanding harmed him. But that is not arbitrariness.

Second, a change – from a warning letter to a hearing – is not necessarily for the worse. The union could reasonably conclude that the opportunity to be heard protects valuable due process rights (e.g. reduction in erroneous deprivations, dignitary value in being heard) lost through the warning letter system and therefore that the change was beneficial. *Cf. O'Neill*, 499 U.S. at 78 ("Congress envisioned the relationship between the courts and labor union as similar to that between courts and the legislature . . . ."). And the Ohio union and employers were used to the existing hearing system and so a change in the most recent CBA could have disrupted labor-management relationships. Moreover, there is a detriment to the progressive punishment system Uszak lauds but which the hearing system avoids. The issuance of a warning letter creates a probationary period where a "second nonserious instance of misconduct can result in suspension or discharge," because that second instance becomes just cause for termination. *Miller v. Gateway Transportation Co., Inc.*, 616 F.2d 272, 276 n.9 (7th Cir. 1980) (interpreting an earlier version of the NMFA)

Third, Uszak could and did present his argument in the grievance process. We have held earlier that a union representative's silence on an interpretation of the relevant CBA with which the union disagreed did not breach the duty of fair representation in light of the fact that the plaintiff had presented the argument to the arbitration panel. *See Garrison v. Cassens Transportation Co.*, 334 F.3d 528, 542 (6th Cir. 2003) ("We cannot see . . . what more [the union representative] could have

said or done . . . other than repeat Garrison's interpretation . . . . Although Garrison is correct . . . that [the representative] would likely have more credibility . . . any intervention . . . would not have added much . . .value to what was already argued . . . .").

For these reasons, even if the adherence to the Ohio Rider hearing policy turned out worse for Uszak, the retention of the Ohio hearing system was not so unreasonable as to be irrational.

## II

In the alternative, Uszak argues that even if the hearing policy pursuant to which he was fired was authorized by the CBA, the union breached its duty by failing to investigate his case adequately. To be sure, fair representation includes undertaking "reasonable investigation to defend a member from employer discipline." *Walk v. P\*I\*E Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir. 1992). But that duty to investigate has its limits – claims that it has been violated are still evaluated under the demanding arbitrariness standard. Indeed, "*any* substantive examination of a union's performance . . . must be highly deferential . . . ." *O'Neill*, 499 U.S. at 78 (emphasis added). Thus, we have described a failure to investigate a potentially winning argument prior to arbitration as "negligent, but not arbitrary in and of itself" and demanded a greater showing before holding a union's omissions constitute a breach of the duty of fair representation. *See Walk*, 958 F.2d at 1329.

Uszak identifies two facts that he alleges constitute an actionable failure to investigate. First, Jesse Woody, the business agent assigned to represent Uszak, did not obtain the video surveillance tape most likely to have captured the fight. Worse, he took Yellow at its word that the video tape was not helpful. Second, Uszak also felt the union's evidence did not demonstrate that he was innocent in the fight and so he asked another union steward to undertake an independent investigation.

These facts are not sufficient to demonstrate arbitrary representation by the union. First, even if the omissions that Uszak charges to the union reveal negligence in failing to pursue every lead, that alone is not arbitrariness per se and more must be shown for a plaintiff to prevail. *See Walk*, 958 F.2d at 1329; *compare ibid.* (holding that a complete failure that "may well have made a difference in the outcome" was not a breach because it was "more of an omission or oversight" and not "capricious[] or in bad faith") *with Black v. Ryder/P.I.E. Nationwide*, 15 F.3d 573, 585 (6th Cir. 1994) (holding the union did breach its duty where "[t]he union here failed to call the one witness could have effectively . . . corroborated Black's testimony" where that witness "would likely altered the results of the grievance proceedings.").

Second, the union did undertake some investigation. Woody spoke with Uszak and Castle, obtained relevant medical and police documents, and attempted (but admittedly failed) to locate the surveillance tape. Woody was able to argue, based on those interviews and documents, that Uszak acted in self-defense and that his termination therefore lacked just cause. This is more than the total absence of investigation and preparation that the circuit has held *not* to breach the duty. *See, e.g.*, *Garrison*, 334 F.3d at 540-42; *Walk*, 958 F.2d at 1327-30. Indeed, in light of the union's (permissible) stance on the CBA, it put on the strongest case for Uszak. At the final appeal before the Ohio Joint State Committee, Woody adduced evidence that the fight was escalated from words to punches by Castle; Uszak called the authorities; Castle was arrested and Uszak was not; Uszak received medical attention for injuries sustained. Unfortunately for Uszak, neither the employer nor the Joint Committee were persuaded – but that would be a problem with the outcome and not with the union's representation.

Finally, Uszak admits that neither the tape nor the alternative investigation revealed anything exculpatory. (In fact, he admits that the videotape, even if it had been located, was inadmissible under the terms of the CBA.). Woody's decision to rely on the concrete police and medical reports could not be irrational because there was no better alternative argument to make. And in any case, these concessions mean that any failure to investigate certainly cannot be said to have "more than likely" tainted the outcome of the hearing and so, accordingly, he cannot demonstrate that a breach caused harm such that he could recover. *See Dushaw*, 66 F.3d at 132.

### III

For the foregoing reasons we hold that as a matter of law Uszak cannot demonstrate that the union breached its duty of fair representation and, accordingly, that his hybrid § 301/breach of duty of fair representation claim cannot succeed. The decision of the district court granting summary judgment to the defendants is therefore AFFIRMED.