Donald P. **HUMPHRESS**, Plaintiff,

v.

**UNITED PARCEL SERVICE, INC., et al., Defendants.**

**Civ. A. No. 1:96–CV–40(R).**

United States District Court,
W.D. Kentucky,
Bowling Green Division.

Oct. 7, 1997.

Theodore H. Lavit, Stephen Bryant Humphress, Theodore H. Lavit & Associates, Lebanon, KY, for Donald P. Humphress, plaintiff.

Charles Laurence Woods, III, Westfall, Talbott & Woods, Louisville, KY, for United Parcel Service, defendant.

Alton D. Priddy, Hardy, Logan & Priddy, Louisville, KY, for General Drivers, Warehousemen & Helpers, Local No. 89, affiliated with, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, defendant.

## MEMORANDUM OPINION

RUSSELL, District Judge.

This action was filed by Plaintiff Donald Humphress against his employer, United Parcel Service, Inc. ("UPS"), and his union, General Drivers, Warehousemen and Helpers, Local Union 89 ("Local 89"). Humphress brings claims under the Labor Management Relations Act, 29 U.S.C. § 185 and under state law. This matter is currently before the Court on separate motions for summary judgment filed by Defendants UPS and Local 89.

### FACTS

Humphress has been an employee of UPS since 1969 and is currently a package driver for the Campbellsville, Kentucky facility. Humphress is a member of Local 89, which, during all times relevant to the action, had two collective bargaining agreements with UPS: the National Master United Parcel Service Agreement beginning August 1, 1993 ("Master Agreement") and the Central Conference Teamsters Supplemental Agreement beginning August 1, 1993 ("Conference Agreement"). Both agreements contain procedures for the resolution of grievances.

On February 28, 1994, Humphress drove vehicle # 40838 instead of his regular vehicle which was being painted. At the end of the day Humphress completed a driver vehicle inspection report ("DVIR"), as required by the collective bargaining agreements, and included a comprehensive list of problems with the vehicle which, according to Humphress, rendered the vehicle unsafe.[1] The UPS mechanic, Steve Hughes reacted to the DVIR by stating that he did not "have time for this bull ___."

On March 2, 1994, Humphress's regular vehicle was returned to him, but the special gearshift that had been installed several years earlier had been removed and replaced with a straight 25 inch gearshift. Humphress had received a modified gearshift several years earlier because he had been suffering elbow, arm, and shoulder pain as a result of the standard gearshift's design.[2] The modified gearshift was taller and bent toward the seat to make it easier to adjust. The modification was approved by Tom

---

1. UPS and the union claim that although the vehicle had been in an accident, it was safe for use.

2. Defendant Local 89 claims that this pain was caused by Humphress playing tennis.

Mouser, UPS's center manager at the time, and cost approximately $10 to $15. Humphress claims that he suffered no further pain while using the modified gearshift.

Humphress claims that his modified gear shift was removed by Steve Hughes in retaliation for Humphress' DVIR on vehicle no. 40838. UPS contends that the modified gearshift was removed because of a UPS directive requiring that vehicles be returned to their original condition. After the modified gearshift was removed, Humphress claims that he began experiencing pain in his elbow and shoulder. He states that he confronted Hughes about the gearshift's removal and that Hughes became abusive and challenged Humphress's completion of the DVIR on vehicle # 40838. After complaining to Hughes' supervisor, Humphress claims that Hughes threatened that Humphress's car may not remain in good condition and would be at the bottom of the list for repairs.

On April 3, 1994, Humphress filed a grievance concerning the removal of his modified gearshift. Subsequently, Humphress began finding grease on the footwells beneath his gas, break, and clutch pedals, which made his feet slip on the pedals. He began finding grease on the truck's metal steps, which made it difficult for him to stand on or climb into the truck. Grease was also found on the vehicle's doors which made them difficult to open and close. An obscenity was written in the dirt on the windshield of Humphress's vehicle and a picture of Humphress's daughter was defaced. According to Humphress, these and other unusual occurrences happened nearly every day.[3] Humphress's experiences were not unusual and similar things happened to the other drivers.

Humphress also alleges that members of UPS management began to harass him. He states that he was required to come in from vacation to attend the hearing of a customer's complaint and that UPS tried to make him pay the customer $200.00. He also says that the district manager, Anson, and another management employee, Elliot, harassed him while making a delivery by appearing on the scene as he was leaving a store and lecturing him about safety.

On May 2, 1994, Humphress withdrew his grievance to give UPS an opportunity to remedy the situation. UPS installed several different gearshifts in Humphress's vehicle but these gearshifts did not completely relieve Humphress's pain and he complained that they were still too short. Humphress claims that other gearshifts at the Campbellsville facility ranged in height from 25 to 31 inches. Some of the gearshifts tried by UPS were angled toward the driver's seat, as requested by Humphress, but on several occasions the angled gearshift was straightened by an unknown individual. As a result, on June 20, 1994, Humphress reinstated his grievance.

Hughes then filed an intraunion grievance against Humphress. Humphress discussed the intraunion grievance with Local 89 official Wolfe who, according to Humphress, told Humphress that he would lose the intraunion grievance and that if Humphress agreed to withdraw his grievance he would get Hughes to withdraw the intraunion grievance, would obtain a more satisfactory gearshift for Humphress, and would put a stop to the harassment.[4] Humphress withdrew his complaint for the second time because of Wolfe's promises and because he feared losing the intraunion grievance because of his support for Ron Carey as National Teamster President.[5] Humphress's grievance was withdrawn under the agreement "that he receive a suitable gearshift." Plaintiff's Response at 22.

---

3. Plaintiff lists several other acts of sabotage, including removing equipment from his vehicle and concealing it, damaging and rearranging personal items, and turning instrument switches on so that the instruments would come on when the vehicle was started. Descriptions of these incidents can be found at pages 12–14 of Plaintiff's Response to the Motions for Summary Judgment (doc. # 45).

4. Defendants contend that Wolfe made no such promises, but instead agreed to talk to Hughes if Humphress withdrew his complaint.

5. Plaintiff goes into great detail about his political activities within Local 89 and how his faction did not support the same candidates as Local 89's leadership. He claims that the same persons who he had antagonized in the past over union leadership elections would be the persons deciding the merits of the interunion grievance.

UPS tried additional gearshifts in Humphress's vehicle but neither was satisfactory. Humphress contends that UPS then offered to outfit Humphress with a vehicle with automatic transmission, an assertion that UPS disputes. Humphress alleges that Wolfe advised him not to reinstate the grievance but to allow Wolfe to work on the problem. Seven months later, after having not received a satisfactory gearshift or a vehicle with automatic transmission, Humphress attempted to reinstate his grievance. This reinstated grievance was heard at the local level where it deadlocked because there were equal votes for denying and for granting the grievance. The state panel then heard the grievance and concluded that it was improper because it was an attempt to reinstate the earlier grievance, which had been withdrawn as settled.

Finally, Humphress cites various safety concerns that he and other drivers have about the UPS vehicles they drive. He claims that Local 89 and UPS have been made aware of a various safety concerns of the drivers but have ignored them all. As a result Humphress says that Local 89 is ignoring its obligations to the drivers and disregarding their health and safety.

## CLAIMS

Plaintiff's complaint contains six claims against UPS and Local 89. These claims are described as follows:

(1) Plaintiff brings a hybrid claim under § 301 of the Labor Management Relations Act ("LMRA") in which he claims that Local 89 breached its duty of fair representation and UPS violated the collective bargaining agreement.

(2) UPS's actions constitute unlawful employment practices under the Kentucky Civil Rights Act, KRS § 344.040.

(3) Assault against UPS.

(4) Intentional Infliction of Emotional Distress, or Outrage, against both Defendants.

(5) Breach of the implied covenants of good faith and fair dealing against both Defendants

(6) Unlawful retaliation against UPS.

Complaint (doc. # 1).

## STANDARD

Federal Rule of Civil Procedure 56(c) allows summary judgment to be granted "if the pleadings, depositions, answers to interrogatories and admissions of file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party must carry the initial burden by "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party can make this showing "by demonstrating that the plaintiff, after an adequate opportunity for discovery, was unable to meet [his or] her burden of proof." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

If the moving party meets its burden, the burden then shifts to the nonmoving party to present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Supreme Court has held that "not every issue of fact or conflicting inference presents a genuine issue of material fact" and "the materiality of any fact should be determined by the substantive law of the case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989). The Supreme Court has held that the standard for granting summary judgment is the same as that for granting a motion for directed verdict. *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Liberty Lobby*, then, requires that a motion for summary judgment be granted unless the evidence is such that the trier of fact could find for the nonmoving party. *Id.*

## DISCUSSION

### 1. Labor Management Relations Act

Humphress's first claim is a hybrid claim under the § 301 of the Labor Management Relations Act ("LMRA") claiming UPS violated the collective bargaining agreement and Local 89 violated its duty of fair representation. In *Smith v. Evening News Ass'n.*, 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962), the Supreme Court recognized the right of individuals to bring suits in federal court under § 301. However, "federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). An employee must give the union an opportunity to pursue his claim unless the contract states otherwise. *Id.* at 653, 85 S.Ct. at 614.

When an agreement includes grievance or arbitration procedures that are intended to be the exclusive remedy for employee complaints, an employee must at least attempt to exhaust all grievance and arbitration procedures provided for in the agreement before filing suit. *Vaca v. Sipes,* 386 U.S. 171, 184, 87 S.Ct. 903, 913–14, 17 L.Ed.2d 842 (1967); *see also Clayton v. International Union, United Auto., Aerospace and Agric. Implement Workers,* 451 U.S. 679, 681, 101 S.Ct. 2088, 2090, 68 L.Ed.2d 538 (1981) ("An employee seeking a remedy for an alleged breach of the collective-bargaining agreement ... must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301(a) of the Labor Management Relations Act."); *Poole v. Budd Co.,* 706 F.2d 181, 183 (6th Cir.1983) ("It is axiomatic that an aggrieved employee must exhaust any exclusive grievance and arbitration procedure created in a collective bargaining agreement prior to bringing a § 301(a) suit against the employer."). However, because the nature of these grievance procedures is such that they are controlled by the employer and the union, there are circumstances in which the employee is not held to this exhaustion requirement. *Id.* at 185, 87 S.Ct. at 914. These circumstances include the following: when the employer's conduct operates as a repudiation of the procedures set out in the contract; when the union has breached its duty of fair representation in its treatment of the grievance; and when utilization of the grievance process would be futile. *Vaca,* 386 U.S. at 185–86, 87 S.Ct. at 914; *Glover v. St. Louis–San Francisco Ry. Co.,* 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969). *See also Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976); *Clayton,* 451 U.S. at 684, 101 S.Ct. at 2093 ("[S]ome courts hold that the employee's failure to exhaust is excused if union officials would be so hostile to an employee that he could not hope for a fair hearing.").

The failure to exhaust remedies provided by the collective bargaining agreement is fatal to a hybrid claim under § 301 unless the employee's failure to exhaust falls within one of the exceptions listed above. *Winston v. General Drivers, Warehousemen & Helpers, Local Union 89,* 93 F.3d 251, 255 (6th Cir.1996). As this Court noted in *Panter v. American Synthetic Rubber Corp.,* 708 F.Supp. 809, 810–11 (W.D.Ky.1987), *aff'd* 845 F.2d 327 (6th Cir.), *cert. denied,* 488 U.S. 827, 109 S.Ct. 77, 102 L.Ed.2d 54 (1988), when a claim "is based upon a breach of the collective bargaining agreement [a plaintiff] is bound by the terms of that agreement as it governs the manner in which contractual rights may be enforced."

Both contracts between Local 89 and UPS contain provisions concerning grievance procedures and the finality of decisions achieved through the grievance process. The Master Agreement requires that any grievance or complaint be handled according to the contract's provisions and a decision by the National Grievance Committee "shall be final and binding upon all parties." Master Agreement art. 8, § 1. The Conference Agreement also provides grievance procedures to be followed by employees and states that "a decision reached at any stage shall be final and binding on both parties." Conference Agreement art. 5, § 1. Humphress does

not contest the mandatory nature of these provisions.

Under the collective bargaining agreement, every grievance is processed through five steps. The complaint is first discussed with a supervisor, then, if not resolved, is reduced to writing and referred to a local panel. Then, if the grievance is not resolved, it is heard by a state panel. If the state panel is unable to resolve the grievance, it is heard by a joint area committee, then a national panel. If the grievance remains unresolved, it is submitted to arbitration. The panel, at each level is comprised of an equal number of UPS and union representatives. Although a grievance can be settled or withdrawn, it may not be reinstated. A grievance may be put on hold while the parties attempt to resolve their differences. If a grievance placed on hold is not resolved the grievance is returned to normal status and continues through the grievance process. Deposition of Larry Wolfe at 104; Deposition of Donald Humphress at 130–35.

Defendants contend that Humphress failed to exhaust these grievance procedures because he refused to modify his grievance so that the panel would hear it. According to the union, if Humphress had changed the subject of his grievance from one concerning the inadequacy of his gearshift to one about UPS's failure to comply with the prior settlement, the panel would have heard it. Humphress replies that he exhausted his grievance remedies because his last grievance was dismissed and there was no further remedy.

Humphress claims that his final grievance "raised every conceivable contract violation, including UPS's failure to live up to its agreements." Plaintiff's Response to Motions for Summary Judgment (doc. # 45) at 64–65. However, a careful reading of Humphress's grievance demonstrates that he did not specifically request enforcement of the settlement agreement. Instead, he repeats his previous complaints, which were addressed in prior grievances. *See* Plaintiff's Response (doc. # 45) Ex. D ("This grievance reinstates issues previously related in grievance dated March 30, 1994."). Humphress did not exhaust his grievance remedies, therefore this action is barred unless he can show that one of the exceptions applies.

Humphress claims, in the alternative, that any attempt to exhaust his contract remedies would have been futile. "[T]he courts insist upon a clear showing of futility before excusing a failure to exhaust." *Id.* (citing *Miller v. Chrysler Corp.*, 748 F.2d 323 (6th Cir. 1984)). Humphress contends that if he had filed another grievance, it would have been dismissed in the same manner that the previous one was. While this may be true of a grievance characterized exactly as the previous one, Humphress could have filed a grievance seeking UPS's compliance with the settlement agreement. A grievance concerning UPS's compliance with the settlement agreements would not be barred because it would raise a new and separate issue. This new grievance, because it would not have been automatically dismissed, would not have been futile.

Humphress also alleges that Local 89 officials bore some animosity toward him for his support of Ron Carey as National President of the Teamsters Union. Humphress claims that Local 89 officers knew of Humphress's support for Carey and that Local 89 officers supported other candidates. However, Humphress does not point to any specific instances that show his grievance would have been prejudiced by his support of Carey. In fact, the Central Conference Agreement states: "UPS representatives and the local union representatives of the UPS committee, representing the UPS operation and/or local union involved in a proceeding before the panel, will be ineligible to act as members of the panel during the proceedings." Central Conference Agreement art. 5 ¶ 2(d). Humphress has not demonstrated that his political affiliations within the union prejudiced his past grievances or that they would prejudice future ones. Thus, he has failed to show that his grievance would have been futile for this reason.

Humphress next argues that he should not have been required to bring another grievance because the statute of limitations on an action under § 301 would have run before the grievance process was completed. Although the Supreme Court has concluded

that actions brought under § 301 have a six month statute of limitations, *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983), a claim under § 301 does not accrue until the grievance process is completed. *See, e.g., Hayes v. Reynolds Metals Co.*, 769 F.2d 1520 (11th Cir.1985). Therefore, if Humphress had filed a new grievance concerning UPS's failure to comply with the settlement arrangement, the statute of limitations on that claim would have been tolled until the grievance had been resolved.

■ Humphress does claim that Local 89 breached its duty of fair representation, which would excuse him from exhausting his contract remedies. Such a breach of duty by the union would excuse Humphress's failure to exhaust his contract remedies. The union, as the exclusive bargaining agent of the employees, is charged with "the responsibility and duty of fair representation." *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). "The exclusive agent's obligation 'to represent all members of an appropriate unit requires [it] to make an honest effort to serve the interests of all of those members, without hostility to any . . . .' and its powers are 'subject always to complete good faith and honesty of purpose in the exercise of its discretion.'" *Id.* at 342, 84 S.Ct. at 367 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337–38, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953)). This duty includes the union's efforts in its collective bargaining and in the enforcement of any collective bargaining agreement. *Id.*

■ "The union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures; if it seriously undermines the integrity of the arbitral process the union's breach also removes the bar of the finality provisions of the contract." *Hines*, 424 U.S. at 567, 96 S.Ct. at 1058. Thus, enforcement of a collective bargaining agreement's finality provision is contingent on the union's fulfillment of its duty to represent the employee. *Id.* 424 U.S. at 570, 96 S.Ct. at 1059. "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the

collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991) (extending *Vaca*'s holding to all union activity); *Walk v. PIE Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir.1992). The employee does not have to demonstrate bad faith or fraud to bring a successful claim for breach of duty of fair representation but negligence or errors in judgment are not enough. *Walk*, 958 F.2d at 1326. However, a gross mistake or inaction without a reasonable explanation may demonstrate a breach of the union's duty. *Poole*, 706 F.2d at 184. The Sixth Circuit has concluded that a breach of duty is only actionable if there is a "direct nexus" between the breach of duty and the resulting injury. *Wood*, 807 F.2d at 502.

■ "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Air Line Pilots*, 499 U.S. at 67, 111 S.Ct. at 1130 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953)). Although *Air Line Pilots* involved contract negotiations, the Sixth Circuit has extended its holding to cases involves the grievance process. *Walk*, 958 F.2d at 1326. The Supreme Court has concluded that Congress did not intend for a federal court to replace the union's decisions with its own. Thus, "[a]ny substantive examination of a union's performance . . . must be highly deferential." *Air Line Pilots*, 499 U.S. at 78, 111 S.Ct. at 1135. "An unwise or even an unconsidered decision by the union is not necessarily an irrational decision." *Walk*, 958 F.2d at 1326.

■ Humphress claims that Local 89 breached its duty of fair representation by failing to conduct an investigation into his complaints, failing to gather DVIR's and mechanic records, failing to investigate the merits of his grievance, and processing his grievance in a perfunctory manner. Plaintiff's Response (doc. # 45) at 54–55. He alleges

that some union officials did not like him and that the union failed to process "invoke the next step" of the grievance process. However, Humphress's arguments are without factual support. Local 89 processed his grievances despite his failure to participate. When a majority of the state panel dismissed Humphress's last grievance, Local 89 advised him to restructure his grievance so that the panels would hear it. Humphress refused to take this advice and instead resorted to this lawsuit.

Local 89 cannot be held responsible for Humphress's failure to heed its advice. There is nothing in the record to demonstrate that Local 89 acted arbitrarily, discriminatorily, or in bad faith. Humphress, as a union steward, knew that "once precedent had been set on a given issue" it could not be raised again. Humphress Deposition at 150. Yet, Humphress failed to heed the union's advice about restructuring his grievance to raise a new issue, UPS's alleged failure to live up to its agreement.

Nor can Local 89 be held responsible for Humphress's erroneous perception that his grievance had been conditionally withdrawn and could be reinstated at any time. Humphress does not attribute this misunderstanding to any union official's statements or actions. Local 89's actions in this respect are not arbitrary or in bad faith because Local 89 did not cause Humphress's incorrect assumption.

Humphress also makes broad assertions of a conspiracy between UPS and Local 89 to thwart his grievances while appearing to process them properly. However, he is unable to support this assertion. Likewise, he is unable to point to any evidence in support of his claims that Local 89 failed to properly investigate his claims. This Court cannot conclude, based on the evidence in the record, that the union's actions were so far outside a "wide range of reasonableness" that they rise to a level of irrational arbitrary conduct. *See Air Line Pilots*, 499 U.S. at 67, 111 S.Ct. at 1130. Therefore, Local 89 did not breach its duty of fair representation and Humphress is not excused from exhausting his contractual remedies.

Humphress' basis for his § 301 claim is essentially that UPS failed to live up to its agreement by not installing a gear shift that would alleviate Humphress' pain. Humphress failed to exhaust his grievance remedies because he did not bring a grievance concerning UPS's alleged failure to comply with the settlement agreed to when Humphress's March 30, 1994 grievance was withdrawn. Humphress has likewise failed to show that one of the exceptions to the exhaustion requirement applies. Therefore, summary judgment is appropriate.

### 2. Kentucky Civil Rights Act

Humphress's second claim concerns UPS's failure to accommodate his disability as required by the Kentucky Civil Rights Act, KRS 344.040, *et seq.* UPS, in its motion for summary judgment, contends that this claim is preempted by § 301 and, therefore, should be dismissed.

■■■ The Supreme Court has concluded that the "dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute [so that] issues raised in suits of a kind covered by § 301[are] to be decided according to the precepts of federal labor policy." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (quoting *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962)). As a result, the Court has determined that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor contract law." *Id.* at 220, 105 S.Ct. at 1916. However, if a state-law claim may be resolved without interpretation of the collective bargaining agreement, it is "independent" of the agreement and not preempted by § 301. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 410, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988).

■■■ UPS argues that Humphress's claim of discrimination on the basis of disability requires interpretation of the collective bar-

gaining agreements between UPS and Local 89 because Humphress sought the return of his gear shift through the grievance procedures set out by the agreements and because the grievances are the only means used by Humphress to notify UPS of his disability. However, claims for violations of statutory civil rights do not involve negotiable rights that can be diminished through a collective bargaining agreement. *See, e.g., Tisdale v. United Association of Journeymen and Apprentices of Plumbing and Pipefitting Industry*, 25 F.3d 1308 (6th Cir.1994) (considering Michigan's civil rights statute).

■■■ In *Tisdale*, the Sixth Circuit considered a claim for race discrimination brought under Michigan's Elliott–Larsen Civil Rights Act. The defendant-union argued that the plaintiffs' claims were preempted by § 301 and should be dismissed. The court, concluding that plaintiffs' claims were not preempted, stated: "This is not fundamentally a labor case involving negotiated contract terms, which is what § 301 addresses. This is a discrimination case involving nonnegotiable rights guaranteed by the State of Michigan.... It would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations independent of a labor contract." *Id.* at 1312. *See also LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 380–81 (6th Cir.1993) ("[T]he ADEA action is not preempted by section 301 of the Labor Management Relations Act because 'employees have the right not to be discriminated against on the basis of age or handicap without regard to the collective bargaining agreement's language about an employee's rights.'") (quoting *O'Shea v. Detroit News*, 887 F.2d 683, 687 (6th Cir.1989)); *Patton v. Toshiba America Consumer Prods.*, 967 F.Supp. 283, 287 (M.D.Tenn.1997) (holding Title VII claims not preempted).

Humphress's attempts to resolve his problem through the grievance procedures should not bar him from bringing a civil rights claim under the KCRA. Likewise, any attempts to use the grievance process to claim notification of UPS should not require interpretation of the collective bargaining agreements. Humphress's claim under the KCRA is not preempted by § 301 and summary judgment is inappropriate.

### 3. Assault

Humphress's third claim is that UPS assaulted him by requiring him to operate a vehicle with a gearshift that did not suit his needs. Specifically, Humphress claims that (1) UPS, through its agent, intentionally removed the specially modified gearshift from Humphress's car; (2) UPS authorized, allowed, and ratified this action by its agent and (3) Humphress began to experience pain as a result. Plaintiff's Response (doc. # 45) at 70. In his response to the motions for summary judgment, Humphress clarifies that he is seeking to recover for assault and battery.

■■■ Under Kentucky law, one is liable for assault if "he acts intending to cause a harmful or offensive contact ... or an imminent apprehension of such a contact, and the other is put in such imminent apprehension." *Restatement (Second) of Torts* § 21. A battery is "any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him." *Sigler v. Ralph*, 417 S.W.2d 239, 241 (Ky. 1967). Humphress has failed to allege a harmful or offensive contact or the imminent apprehension of such a harmful or offensive contact. The replacement of his gearshift with another does not constitute such a contact or the imminent apprehension thereof. Therefore, summary judgment is appropriate on this claim.

### 4. Intentional Infliction of Emotional Distress

■■■ Humphress next alleges that the "harassment" engaged in by UPS and Local 89 caused him emotional distress. Under Kentucky law, a claim of intentional infliction of emotional distress requires the following:

(1) the wrongdoer's conduct must be intentional or reckless;

(2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;

(3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and

(4) the emotional distress must be severe.

*Humana v. Seitz,* 796 S.W.2d 1, 2–3 (Ky. 1990). Kentucky courts have recently narrowed this claim so that an actor incurs liability "only where [he or she] intends to invade the interest in freedom from severe emotional distress." *Rigazio v. Archdiocese of Louisville,* 853 S.W.2d 295, 298 (Ky.Ct. App.1993).

██ The Kentucky courts have construed the outrage element to require "a deviation from all reasonable bounds of decency [that] is utterly intolerable in civilized community." *Humana,* 796 S.W.2d at 3. In *Humana v. Seitz,* the Kentucky Supreme Court relied upon the Restatement (Second) of Torts § 46, comment, to determine what is outrageous.

> It has not been enough that the defendant has acted with an intent which is tortious ..., or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice." .... Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

RESTATEMENT (SECOND) OF TORTS § 46, comment d, *quoted in Humana,* 796 S.W.2d at 3.

██ Kentucky courts have refused to find outrage in cases involving callous comments to the mother of a stillborn baby, *see Humana,* 796 S.W.2d at 3–4, the theft of marital assets, *see Whittington v. Whittington,* 766 S.W.2d 73 (Ky.App.1989), and refusal to make timely payment of benefits in a worker's compensation case. *Zurich Insurance Co. v. Mitchell,* 712 S.W.2d 340 (Ky.1986). Humphress's allegations fall within this group because his allegations do not show that either UPS or Local 89 has acted in a manner that "deviat[es] from all reasonable bounds of decency and is utterly intolerable in civilized community." *Humana,* 796 S.W.2d at 3. Therefore, summary judgment is appropriate on this claim.

### 5. Implied Covenants of Good Faith and Fair Dealing

██ Humphress claims that the collective bargaining agreements have created an implied covenant of good faith and fair dealing which UPS breached by removing his gearshift. Such a claim, by its nature, involves the interpretation of the collective bargaining agreements either in considering Humphress's claim or any defense that relies upon the contract. Since this claim requires an interpretation of the collective bargaining agreements, it is preempted by § 301 and shall be dismissed. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

### 6. Retaliation

██ Humphress's final claim is that UPS removed his gearshift in retaliation for his complaints about the safety of vehicle # 40838. Humphress claims that federal and state safety regulations imply an employee's ability to assert rights under these regulations without being retaliated against, but he does not cite any cases in support of this argument. The retaliation alleged by Humphress involves acts that UPS claims are defensible under the collective bargaining agreements. Any analysis of Humphress's claim for retaliation will involve a consideration of UPS's defense and, thus, an interpretation of the collective bargaining agreement. Such an analysis invokes § 301 which preempts this claim. Therefore, summary judgment is appropriate on this claim. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

### CONCLUSION

Humphress has failed to demonstrate that he exhausted his remedies under the collective bargaining agreements, and he has not demonstrated that any attempt at exhaustion would be futile or that Local 89 breached its duty of fair representation. As a result he has failed to meet one of the prerequisites for bringing a hybrid action under § 301 and summary judgment is appropriate on this claim. Summary judgment is also appropriate on Humphress's state law claims of assault

and intentional infliction of emotional distress because Humphress has failed to meet his burden on those claims. Likewise, summary judgment is appropriate on Humphress's claims of breach of the implied covenant of good faith and fair dealing and retaliation because these claims require interpretation of the collective bargaining agreement and are preempted by § 301. Humphress's claim for discrimination under the KCRA because it is not preempted by § 301, however, this is a claim brought under state law and this Court declines to exercise its jurisdiction and the claim shall be dismissed without prejudice. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## ORDER

Defendants having filed separate motions for summary judgment and the Court being sufficiently advised,

**IT IS ORDERED:** Defendant General Drivers, Warehousemen and Helpers, Local Union 89's motion for summary judgment (doc. # 21) is **GRANTED** and all claims against it are **DISMISSED WITH PREJUDICE.**

**IT IS ALSO ORDERED:** Defendant United Parcel Service, Inc.'s motion for summary judgment (doc. # 20) is **GRANTED.** All of Plaintiff's claims are **DISMISSED WITH PREJUDICE** except Plaintiff's claim under the Kentucky Civil Rights Act. Plaintiff's claims under the Kentucky Civil Rights Act are **DISMISSED WITHOUT PREJUDICE.**

This is a final and appealable order. There is no just cause for delay.