**Wendy Hobbs EDWARDS, Plaintiff,**

v.

**FORD MOTOR COMPANY,
et al., Defendants.**

**No. 3:98CV–627–H.**

United States District Court,
W.D. Kentucky,
at Louisville.

Oct. 11, 2001.

---

Ruby D. Fenton–Iler, Pitt, Fenton & Smith, Louisville, KY, for Wendy Hobbs Edwards.

T. Hunter Jefferson, J. Michael Brown, Sr., Wyatt, Tarrant & Combs, Louisville, KY, Lisa C. Foster, Carey P. DeDeyn, Lela M. Young, Brenda B. Page, Sutherland, Asbill & Brennan, Atlanta, GA, for Ford Motor Co.

Herbert L. Segal, John Christopher Sanders, Segal, Stewart, Cutler, Lindsay, Janes & Berry, Louisville, KY, for Intern. Union, United Auto, Aerospace and Agricultural Implement Workers of America and Local 862 Intern. Union.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Plaintiff, Wendy Hobbs Edwards ("Edwards"), has asserted a Family Medical Leave Act ("FMLA") claim against Defendant, Ford Motor Company ("Ford"). She also has claims against Defendants, International Union of United Automobile Workers and its Local 862 (the "Unions") for breach of its duty of fair representation under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 141, *et seq.* ("LMRA"), as well as claims under the Kentucky Civil Rights Act and the Kentucky Equal Opportunities Act. Defendants long ago moved for summary judgment. The Court now considers these motions.[1]

Plaintiff says that Ford denied leave to which she was entitled under the FMLA, failed to give notices required by the FMLA, and retaliated against her for exercising FMLA rights. Defendant Ford contends that the statute of limitations bars Edwards' claim. Ford also argues that Edwards cannot claim FMLA protection because: (1) she had exhausted her FMLA leave prior to her termination, and (2) she had worked fewer than 1250 hours in the preceding twelve months, and therefore was not an "eligible employee" under FMLA. Defendant Unions say that Plaintiff's LMRA claims are barred by her fail-

ure to exhaust internal remedies under the Collective Bargaining Agreement ("CBA").

Both Plaintiff and Defendant Ford have filed voluminous briefs strenuously and effectively arguing the merits of Edwards' various FMLA claim. The Court has carefully reviewed the competing memoranda and has had the benefit of a conference to discuss all the issues. Throughout their memoranda, the parties raise any number of issues, such as notice and eligibility, which ultimately prove collateral. These issues are complex, confusing and tend to divert attention from those more central to the case. In this Memorandum Opinion, the Court will limit its primary consideration to Plaintiff's essential complaint as well as those issues which actually resolve the pending motions.

### I.

Distilled to its essentials Plaintiff's complaint is that Ford fired her although she still had leave left, thus violating her rights under the FMLA. The Court has reviewed this central grievance, and determined that, even assuming her FMLA eligibility, Plaintiff had exhausted all FMLA leave well in advance of her dismissal.[2]

Under the FMLA an employee is entitled to twelve workweeks—or sixty workdays—leave in any calendar year. *See* 29 CFR § 825.200. Ford has filed extensive documentary evidence demonstrating the operation of its leave policies generally, as

---

1. Plaintiff also maintains claims against Ford for disability discrimination under the Kentucky Civil Rights Act and for violation of the Collective Bargaining Agreement under the Labor Management Relations Act. On July 9, 2001, Ford moved for summary judgment on these claims. Plaintiff spends considerable time arguing issues not raised by the initial motions. The Court will consider these motions and issues at a later time.

2. The Court gave considerable attention and thought to the question of whether Plaintiff

was an FMLA "eligible employee on or about September 4, 1996." The answer depends on what time period one must use to determine eligibility. Though it is quite clear that for the year preceding September 4, 1996, Plaintiff worked less than the 1250 hours required for eligibility; it is not so clear whether this is the relevant period for consideration. In view of the Court's statute of limitations conclusion, the Court need not resolve this last question.

well as their application to Edwards specifically. Edwards says the documents and numbers contained therein are too confusing to be trusted, and offers a competing interpretation of her FMLA leave status.

■ Ford relies upon the affidavit of Rosemarie Tyler, a Ford Labor Relations Associate responsible for processing employee leave requests, and the attached exhibits which set forth Edwards' absences from work during 1995 and 1996. In particular, the Court has carefully scrutinized Edwards' H–160 report (Ex. D) and the corresponding codes that explain the reason for an employee's absence (Ex. E). The Court counts that by August 15, 1996, (not August 12, as asserted by Ford) Edwards had used 65 days of leave for reasons designated either "MR (FMLA Leave (Employees' Serious Health Condition))" or "UR (FMLA Leave (unpaid personal leave))." [3] Other exhibits to that affidavit (Ex.'s H through T) document each one of Edwards' requests for leave and the specific reasons for her request. These documents show that each leave qualified under FMLA. Consequently, Edwards accumulated her sixtieth (and last) day of FMLA leave on August 8, 1996 (not August 1, as asserted by Ford). In sum, by September 4, 1996—the date Plaintiff requested her final leave—she was no longer eligible for FMLA leave as she had already surpassed the amount required by the statute.

Ford's specific, comprehensive and credible documentation puts the burden on Edwards to bring forth evidence that she had not exhausted her leave. Edwards contends that Ford's numbers are confusing, untrustworthy and conflicting, and faults the process of so-called retroactive determinations of leave status.[4] Plaintiff does

---

**3.** The breakdown of Edwards' FMLA leaves is as follows:

| | |
|---|---|
| 1) Wednesday, January 17, 1996 to Friday, February 23, 1996: | 28 days |
| 2) Monday, April 22, 1996 to Friday, May 3, 1996: | 10 days |
| 3) Friday, May 17, 1996 to Friday, May 31, 1996: | 9 days |
| 4) Friday, June 14, 1996: | 1 day |
| 5) Monday, July 22, 1996 to Thursday, August 1, 1996: | 9 days |
| 6) Tuesday, August 6, 1996 to Thursday, August 15, 1996 | 8 days |
| Total | 65 days |

The Court notes that Ford inaccurately asserts that Edwards had used 65 days of FMLA leave by August 12, 1996. (*See* Def.'s Cross–Mot. for Partial Summ. J., p. 11). This may be due to the fact that Edwards' sixth leave request was for the period of August 6, 1996 to August 12, 1996 and her seventh request for August 13, 1996 to September 3, 1996. (*See* Tyler Aff., Ex.'s O, P). Ford's motion includes a chart detailing Edwards' leaves that contains the same information as that produced by the Court in this footnote, except that Ford lists Edwards' sixth leave—from August 6 to August 12—as comprising eight days of FMLA leave. (*See* Def.'s Cross–Mot. for Partial Summ. J., p. 11). Ford's H–160 Report for Edwards indicates that the first three days of Edwards' seventh leave—from August 13 to August 15—were listed as "MR (FMLA Leave (Employee's Serious Health Condition))". (Ex. D). The remainder of Edwards' seventh leave—from August 16 to September 3—was listed as "M," or a medical absence not designated as FMLA leave. (Ex. E). This switch in designation "mid-leave" is explained by the fact that Ford's timekeeping system records up to thirteen workweeks—or sixty five days—before it stops counting FMLA leave. (*See* Tyler Aff., ¶ 12). Ford's briefing error on this point does not affect the ultimate disposition of the case. Nevertheless, the Court highlights this discrepancy because it illustrates the difficulty of computing the relevant figures in this complex case. In the end, however, the facts as to leave taken are clear and undisputable.

**4.** Plaintiff asserts that as of her termination on September 23, 1996, Ford had designated only 48 days of her absences as FMLA leave and says other documents suggest "it is unclear if Ford itself knew how much FMLA leave Edwards had taken at the time it terminated her employment." (Pl.'s Partial Mot. for Summ. J., p. 6). However, one must look at all the documentation not just a part of it. True, the process for identifying and ultimate-

confuse an already complex subject. However, Plaintiff must do a lot more than claim confusion. Significantly, she does not specifically rebut any of the individual FMLA leave determinations described in Tyler's affidavit and verified by the other cited exhibits. This is devastating to her case.

The Court finds that Ford's accounting of FMLA leave is so precise that the Court can rely upon it for purposes of deciding the pending motion as a matter of law. As of August 8, 1996, Edwards had exhausted her FMLA leave for that calendar year and was not entitled to any further such leave.

## II.

▮▮▮ Ford contends that the applicable statute of limitations bars Edwards' FMLA claim. That statute requires that all claims "be brought … not later than two years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c). Although her FMLA eligibility had expired much earlier, for the sake of argument the Court assumes that the date of the last event constituting an alleged violation could be September 23, 1996—the date of her termination. Edwards filed her lawsuit on October 5, 1998. Therefore, Edwards' claim is clearly time barred unless FMLA's alternative three-year statute of limitations for willful violations applies. See 29 U.S.C. § 2617(c)(2).

▮▮▮ Federal courts do recognize that a general averment as to willfulness is sufficient to trigger the three-year statute of limitations. See Settle v. S.W. Rodgers Co., Inc., 998 F.Supp. 657, 664 (E.D.Va. 1998). The allegations of the complaint were sufficient to avoid an early motion to dismiss.[5] However, this case is now well beyond the initial stages. Where discovery is completed, Edwards must have some evidence from which either the Court or a reasonable jury might find a willful FMLA violation. The Sixth Circuit has not specifically considered willfulness in this context. However, it seems beyond debate that the evidence must show more than Ford's mere negligent violation of a particular obligation of the FMLA. This Court concludes that willful conduct in this context is viewed as an employer that knows its conduct to be wrong or has shown reckless disregard for the matter in light of the statute. See Sampson v. Citibank, F.S.B., 53 F.Supp.2d 13, 19 (D.D.C. 1999) (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (defining willfulness under an analogous statute, the Fair Labor Standards Act)); Caucci v. Prison Health Services, Inc., 153 F.Supp.2d 605, 609 (E.D.Pa.2001); Settle, 998 F.Supp. at 663.

Ford has presented a massive amount of evidence showing its attempts to properly document and account for the leave status of its employees, including Edwards. The accounting is so accurate that Edwards cannot challenge any particular determina-

---

ly categorizing leave can be made to seem confusing. In the end, however, the determinations and numbers are clear. The record reflects that Ford usually provisionally granted all properly documented leave requests, often without specifically categorizing the leave. Later Ford would classify the leave based on more investigation or information. (See Tyler Aff., ¶ 16). Absent some additional

evidence, such a process does not infer that the final classification was improper.

5. "In addition to compensatory and actual damages, Plaintiff is entitled to recover liquidated damages from Defendants, in that the acts and omissions of Defendants complained of herein were committed willfully," Pl.'s Compl., ¶ 38.

tion. Ford also goes to great lengths to notify its employees of their FMLA and other leave status. Neither the Court nor a jury need conclude that the record keeping and notices were perfect or even that notices complied with applicable law. Both the FMLA statute and Ford's notification procedures for FMLA leave status are confusing. However, this Court can find absolutely no evidence to support Plaintiff's conclusory allegations that Ford provided intentionally misleading information or violated the statute concerning Edwards' FMLA leave determination.[6] No reasonable jury could find from this evidence that Ford willfully violated the FMLA. Consequently, the Court concludes that Edwards' FMLA claims are governed by the two-year statute of limitations and, therefore, are barred.

The Court is acutely aware that Plaintiff was stricken by a serious disease and that, generally, she is one of the class of persons that FMLA is designed to protect. In dismissing Edwards' FMLA claims the Court is mindful that the "FMLA is intended to allow employees to balance their work and family life by taking reasonable unpaid leave for medical reasons . . . ." 29 CFR § 825.101(a). "When a family emergency arises, requiring workers to attend to . . . their own serious illness, workers need reassurance that they will not be asked to choose between continuing their employment, and meeting their personal and family obligations or tending to vital needs at home." *Id.* at § 825.101(b). All that said, the evidence in this case is clear that Ford did not force her to choose between work and recovery. Indeed, not only is there no allegation that Ford ever denied Plaintiff leave to convalesce, but the record actually indicates that Defendant granted Edwards' time off well beyond that which FMLA required.

### III.

Edwards' primary claim against the Unions concerns their breach of the duty of fair representation under the LMRA. Integral to this claim is Plaintiff's assertion that the Unions breached that duty for reasons of discrimination and retaliation. The Unions argue that Edwards' claim for breach of its duty of fair representation is barred due to Edwards' failure to exhaust internal union remedies. Several facts seem absolutely undisputed. Edwards properly filed a CBA grievance disputing her termination following a five-day notice letter.[7] The Unions pursued the grievance through the initial stages, but declined to pursue it past step three and one-half to arbitration. Edwards did not appeal that decision through the union administrative processes.[8]

---

6. The most persuasive analysis supporting this conclusion is found in Section I of this Memorandum, where the Court agrees with Ford's calculating of Edwards' FMLA leave. The Court will consider as true that Plaintiff was confused by some of the documentation that Ford provided her. Ford did make retroactive determinations of leave status which Plaintiff states were confusing, but which she does not actually dispute. Plaintiff's mere confusion is not evidence of Ford's willful violation of the statute. In essence, Plaintiff asks the Court to conclude that any violation must have been intentional. The Court cannot draw such a conclusion from Plaintiff's allegations of confusion and notice violations.

7. For purposes of this motion, the Court assumes that the parties are guided by the CBA. The LMRA claim and the Unions' obligations are grounded in the CBA's provisions.

8. Article 33 of the UAW Constitution provides that a member may challenge a Local Unit's decision to not pursue a grievance to arbitration by appealing her claim to the International Executive Board, the Convention Appeals Committee or to the Public Review Board.

## A.

A union member must exhaust all internal grievance procedures before asserting a LMRA claim for breach of the duty of fair representation. *See Clayton v. Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am.*, 451 U.S. 679, 681, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981) (citing, *inter alia, Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). There are a few exceptions to this well-established rule. The Supreme Court's decisions in *Clayton* and *Vaca* set forth two related, but not entirely identical standards for excusing a failure to exhaust internal union remedies. For some reason, courts seem never to discuss these two standards together. Here, Defendant argues the *Clayton* line of precedent while Plaintiff relies on *Vaca* and its progeny. The Court concludes that, under either strand of exhaustion doctrine, Plaintiff's claim may not be sustained.

*Clayton* outlines the three most commonly considered factors for excusing a failure to exhaust:

first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of the internal procedures would delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

451 U.S. at 689, 101 S.Ct. 2088. Plaintiff has made no allegations that hostility, inadequacy or delay were the reasons for her failure to appeal the Unions' decision to end the grievance. Though Edwards has not presented evidence that satisfy any of the *Clayton* factors, this does not end the inquiry.

Perhaps sensing an adverse result under *Clayton*, Plaintiff argues that "[a] failure to exhaust may be excused ... if the employee establishes that the union breached its duty of fair representation in the processing of the grievance." *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir.1983) (citing *Vaca*, 386 U.S. at 186, 87 S.Ct. 903); *see also Humphress v. United Parcel Serv. Inc.*, 31 F.Supp.2d 1004, 1010 (W.D.Ky. 1997). "A breach of the statutory duty of fair representation occurs only when a union's conduct towards a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190, 87 S.Ct. 903; *Walk v. P\*I\*E\* Nationwide, Inc.*, 958 F.2d 1323, 1326 (6th Cir.1992); *Poole*, 706 F.2d at 183. The *Vaca* components reflect the Court's judgment that union decisions are entitled to great deference, and subject to challenge only if "wholly irrational." *Walk*, 958 F.2d at 1326 (quoting *Air Line Pilots Ass'n Intern. v. O'Neill*, 499 U.S. 65, 78, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991)).

Edwards contends that the Unions' actions were arbitrary and in bad faith because it reduced her grievance from a fourth stage refereed hearing to a three-and-a-half stage non-refereed hearing, and after she lost at this level, refused to take her case to arbitration. In fact, she claims that the Unions' real reasons for not pursuing the grievance were discriminatory and retaliatory.[9] On October 11, 1996, following her discharge, Plaintiff filed a written second stage grievance. On November 21, 1996, this grievance was denied. The next day the Unions appealed her grievance to the third stage. On May

---

9. Evidence of discrimination or retaliation, if any, would be relevant to show that the Un- ions acted arbitrarily or in bad faith in violation of the duties under the FMLA.

28, 1997, this grievance was also denied. The Unions again appealed, but on September 1, 1998, informed Edwards that her grievance had been heard at the three-and-a-half step level on August 12, 1998, and was being withdrawn without precedent, meaning the Unions would not take her claim to arbitration. Plaintiff also alleges that the Unions' representatives failed to return her phone calls, and on one occasion left an embarrassing phone message for her on the general mailbox at her new place of employment, despite her stated desire to be contacted at home. (Pl.'s Comp., ¶¶ 19–27).

 Even when viewed in a light most favorable to Plaintiff, these facts fall far short of demonstrating a breach of the duty of fair representation. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Walk*, 958 F.2d at 1326 (quoting *O'Neill*, 499 U.S. at 67, 111 S.Ct. 1127). "The employee need not necessarily show bad faith, yet mere negligence or mistaken judgment is insufficient to establish a breach of the union's duty." *Poole*, 706 F.2d at 183. Most importantly, "a union does not have to process a grievance that it deems lacks merit, as long as it makes that determination in good faith." *Williams v. Molpus*, 171 F.3d 360, 367 (6th Cir.1999) (citing *Whitten v. Anchor Motor Freight*, 521 F.2d 1335, 1341 (6th Cir. 1975)).

Plaintiff has not presented any evidence beyond bald allegations of minor irregularities to support her contention that the Unions acted irrationally in their determination that the merits of her claims were weak, and did not justify referral to arbitration.[10] She has presented no direct evidence of discriminatory reasons for the Unions ending the grievance process. Edwards has presented no evidence that the Unions treated her differently than other similarly situated members. The logical implication of sustaining Edwards' claim is that a Union must pursue every grievance to finality, without regard to the strength or weakness of particular cases. This is not the law. *See Vaca*, 386 U.S. at 191, 87 S.Ct. 903 ("Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion, we do not agree that the individual employee has an absolute right to arbitration regardless of the provisions of the applicable collective bargaining agreement.").

In sum, the Court finds no reason here to interfere with the legitimate exercise of internal union decision making and grievance procedures under its constitution and the CBA. *See Poole*, 706 F.2d at 184 (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976)).

### B.

 Plaintiff's only other excuse for bypassing the intraunion appellate process—and instead opting to seek recourse in federal court—is that she had no knowledge of its existence. Specifically, Plaintiff claims that she asked for, but never received, a copy of the Collective Bargaining Agreement, was unaware of the UAW Constitution, and had never read in any of the Unions' publications about members' rights to appeal. Furthermore, Edwards alleges that when she asked the Unions'

---

**10.** The basic evidence is that Plaintiff failed to respond to the five-day letter in September, 1996, though she had responded to previous letters. Of course, Plaintiff denies receiving the last letter. However, the Unions' decision not to pursue the matter is based upon reliable evidence and, clearly, is not arbitrary.

representatives about her rights as a member, "the Unions declined to tell her that such a system existed, thus clearly misrepresenting the facts regarding the availability of such remedies." (Pl.'s Resp. Mem. to Def.' UAW's Mot. for Summ. J., p. 8).

■ Ignorance is not a valid excuse for the failure to exhaust one's intraunion appeals. Plaintiff does not cite any precedent supporting this argument, nor can the Court find any among the vast case law explaining the exhaustion requirements in this context. In fact, both the specific directives and theoretical underpinnings of the exhaustion doctrine compel a contrary conclusion. First, while "[a] union's obligations [do] include the duty to inform members of their essential rights under an employment contract," *Walk*, 958 F.2d at 1326, a member's "obligation[s include] the duty to become aware of the nature and availability of union remedies." *Miller v. General Motors Corp.*, 675 F.2d 146, 149 (7th Cir.1982) (quoting *Newgent v. Modine Mfg. Co.*, 495 F.2d 919, 927–28 (7th Cir. 1974)). The exhaustion rule is "intended to protect the integrity of the collective-bargaining process and to further that aspect of national labor policy that encourages private rather than judicial resolution of disputes arising over the interpretation and application of the collective-bargaining agreements." *Clayton*, 451 U.S. at 687, 101 S.Ct. 2088. Plaintiff essentially requests this Court to create an additional exception to the exhaustion requirement beyond those crafted by the Supreme Court in *Clayton* and *Vaca*. It would be inappropriate for the Court to do so. *Cf. Monroe v. Int'l Union, UAW*, 723 F.2d 22, 25 (6th Cir.1983).

### IV.

Plaintiff has also alleged that the Unions have discriminated against her on the basis of her disability, in violation of the Kentucky Civil Rights Act and 1976 Equal Opportunities Act. Typically such claims under these statutes are made against one's employer. In this case, the Unions are not the Plaintiff's employer. Moreover, the same facts which arguably might provide a basis for a claim against Plaintiff's employer do not state a claim against the Unions. The LMRA may well preempt any separate state law causes of action for discrimination within the collective bargaining agreement process. For purposes of this analysis, however, the Court will assume that Edwards can assert such a claim against the Unions and that she is disabled as defined by statute.

■ The Court applies the standard burden shifting analysis. *Terbovitz v. Fiscal Court of Adair Cty.*, 825 F.2d 111, 114–115 (6th Cir.1987). The Unions has proffered a plausible reason for not taking Plaintiff's claim to arbitration: Edwards failure to respond to the five-day quit notice from Ford was a violation of the CBA. Accordingly, once the defendant has stated a legitimate justification for its actions, the plaintiff must produce some evidence that the stated reasons are a mere pretext or subterfuge. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084–85 (6th Cir.1994).

Edwards has presented no direct evidence of discriminatory animus. She has presented no evidence that the Unions treated her differently than other similarly situated non-disabled persons. Edwards has stated only that there may be legitimate reasons to pursue her claim to arbitration. In this area, Plaintiff must have evidence that Defendants' proffered reasons have no basis in fact. *Id.* at 1084. Plaintiff has not produced such proof. Disagreement about the factual wisdom of a defendant's decision, however, does not suffice to prove pretext or subterfuge or discrimination.

The Court will enter an order consistent with this Memorandum Opinion.

## ORDER

All parties have moved for summary judgment. The Court has issued a Memorandum Opinion and this order .is consistent with it. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that Ford's motion for summary judgment on Plaintiff's FMLA claim is SUSTAINED and Plaintiff's FMLA claims against it are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Unions' motion for summary judgment is SUSTAINED and all Plaintiff's claims against the Unions are DISMISSED WITH PREJUDICE.

Ford's motion for summary judgment on Plaintiff's claims under the Labor Management Relations Act, the Kentucky Civil Rights Act, and the Kentucky Equal Opportunities Act remains pending.